UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK


CAROL GRAY, et al.,            *     Case No. 14-CV-2488(MKB)
                              *
            Plaintiffs,        *     Brooklyn, New York
                              *     September 16, 2014
      v.                       *
                              *
CITY OF NEW YORK, et al.,      *
                              *
            Defendants.        *
                              *
* * * * * * * * * * * * * * * *

       TRANSCRIPT OF CIVIL CAUSE FOR INITIAL CONFERENCE
            BEFORE THE HONORABLE MARILYN D. GO
             UNITED STATES MAGISTRATE JUDGE

APPEARANCES:

For the Plaintiffs:           MICHAEL O. HUESTON, ESQ.
                              16 Court Street
                              Suite 3301
                              Brooklyn, NY  11241

                              VICTOR ANTONIO, ESQ.
                              Dunlop & Associates, PC
                              198 Rogers Avenue
                              Brooklyn, NY  11225

For the Defendant,            BRENDA ELAINE COOKE, ESQ.
 City of New York:            JOSEPH ANTHONY MARUTOLLO, ESQ.
                              New York City Law Department
                              100 Church Street
                              New York, NY  10007


For the Defendant,            ANTHONY DiFIORE, ESQ.
 Sgt. Mourad:                 The Quinn Law Firm
                              399 Knollwood Road, Suite 220
                              White Plains, NY  10603


Proceedings recorded by electronic sound recording, transcript
produced by transcription service.

**Fiore Reporting and Transcription Service, Inc.**
**4 Research Drive, Suite 402**
**Shelton, Connecticut 06484 (203)929-9992**

```
APPEARANCES:  (Cont'd)

For the Defendant,              JOHN W. BURNS, ESQ.
 Police Officer Jovaniel       Worth, Longworth & London, LLP
 Cordova:                      111 John Street, Suite 640
                               New York, NY  10038
```

3

1          (Proceedings commenced at 11:45 a.m.)

2               THE COURT: Grey vs. City of New York, docket no.

3     2014-CV-2488.  Will counsel present please state their names

4     for the record.  For the plaintiffs?

5               MR. HUESTON:  Michael Hueston.

6               THE COURT:  For the City defendants.

7               MS. COOKE:  Brenda Cooke.

8               MR. MARUTOLLO:  And Joseph Marutollo.

9               THE COURT:  For Sargent Mourad.

10              MR. DiFIORE:  Anthony DiFiore from The Quinn Law

11    Firm.

12              THE COURT:  And for Officer Cordova.

13              MR. BURNS:  John Burns, Worth, Longworth and London.

14    Good morning, Your Honor.

15              THE COURT:  Good morning, all.

16              Before we were on -- went on the record we began

17    discussion of the scheduling order.  And I thought it would be

18    wise, given that this is a more complex case, to have this

19    discussion recorded.

20              The parties have advised me that they have

21    ultimately agreed to a nine month fact discovery schedule and

22    so the discovery deadline for fact discovery will be June

23    16th.

24              Now we were in the process of discussing experts and

25    Mr. Hueston had mentioned that he may have a medical expert to

4

1    discuss the quality of the treatment provided by EMS and also

2    to support potential claims regarding a delay in the arrival

3    of EMS.  Is that correct?

4             MR. HUESTON:  Yes, Your Honor.

5             THE COURT:  Okay.  And you had another expert.

6             MR. HUESTON:  That would be either -- I believe --

7    let me put it this way.  Not crime scene but a police tactics

8    expert, Your Honor.

9             THE COURT:  All right.  And then Ms. Cooke had

10   indicated that while the City will -- is likely to have

11   rebuttal experts, the City may have its own --

12            MS. COOKE:  Correct.  Depending on the development

13   of the fact discovery and if there is -- of the plaintiff's

14   claims in the case, it might be that -- I could see that we

15   might need a forensic pathologist or a ballistics expert.

16            THE COURT:  Okay.  And defendants?

17            MR. DiFIORE:  I don't see anything.

18            MR. BURNS:  No, Your Honor.  Nothing is anticipated.

19            MR. DUNLOP:  Excuse my tardiness, Your Honor.

20            MR. HUESTON:  We're on the record right now, so if

21   you could state your appearance --

22            MR. DUNLOP:  Yes.  Victor Dunlop, Dunlop and

23   Associates, PC, for the plaintiff, Carol Gray.

24            THE COURT:  We'll hold future conferences in the

25   courtroom.

5

1          (Pause.)

2              THE COURT:  Okay.  I'm sorry.  I got distracted.

3    What was just said?

4              MS. COOKE:  Oh, I indicated we may have a

5    affirmative defendant's experts, ballistics, a forensic

6    pathologist possibly depending on the seriousness of the

7    plaintiff's claims in the case has been developed and the fact

8    discovery issues.

9              MR. DiFIORE:  And, Your Honor, I don't think --

10   Anthony DiFiore for Sgt. Mourand.  And I don't think we would

11   have anything beyond the City experts.

12             THE COURT:  Okay.  So I think it's still probably

13   premature to talk about experts, but -- I mean, to set an

14   expert schedule.

15             MR. DiFIORE:  Agree.

16             MR. HUESTON:   That's fair.

17             THE COURT:  Although I do think, as I mentioned

18   before we went on the record, the City defendants, if they're

19   going to make an argument about a lack of special duty on the

20   part of EMS, might be in a position to make a motion sooner

21   rather than later so we don't get sidetracked by unnecessary

22   medical related discovery.

23             Obviously, there will be discovery regarding the

24   medical condition of the decedent.  The whole issue of the

25   treatment could end up being somewhat complex.

6

1          And so I think what might make sense is perhaps five

2   months into the -- this case, we might just have to -- I'll

3   ask the parties to confer on experts to figure out where you

4   are.

5          MR. HUESTON:    That's fine.

6          THE COURT:  And that probably might be a good time

7   to see if it makes sense to start talking about settlement, or

8   do you think it makes sense to start talking earlier?

9          MS. COOKE:  Your Honor, the City is always happy to

10  entertain discussions about settlement. I think that as we are

11  getting access to some of the documents and information in the

12  case it helps us evaluate the case a little bit better.

13         THE COURT:  Okay.

14         MS. COOKE:  So at this point I mean the IME

15  investigation just closed and we need to get access to that.

16  That file will be hugely helpful for all parties.

17         And so I think a little bit more time I think for

18  both sides may be necessary.

19         THE COURT:  Okay.

20         MS. COOKE:  Certainly that could happen within five

21  months.

22         MR. HUESTON:    I agree with that, Your Honor.

23         THE COURT:  Okay.  Well, we'll have two things that

24  you need to file a report on.  One is the status of expert --

25  we could actually set a shorter time for a report on

1    settlement, if you think it would be useful. If not, I'm happy

2    to wait five months.  I don't want to be in the business of

3    reading these reports and making you write reports that are

4    unnecessary.

5         MR. HUESTON:   I think what's going to -- I guess

6    the main issue is when are we going to get the -- there's

7    several reports that I think are the most important and I'll

8    just state them so that Your Honor has an understanding.

9         There's a crime scene unit case file we're waiting

10   for.  The King's County District Attorney's Office

11   investigation file.  The 67th Precinct Detective Squad

12   investigation file.  The firearm discharge investigation

13   reports, nos. 13 through 17.  And there's the IAB file

14   relating to the shooting.

15        I think we all are in agreement that those are very

16   important, critical files. And we spoke yesterday about the

17   timing on those.

18        So if we get them sooner than four months, I think

19   it would work.  But if not, I think the five months is

20   probably the best way.

21        THE COURT:  Okay.  Well, you can surprise me and

22   send me an earlier report if you think you need to take

23   action.

24        I mean -- and certainly, I'm actually interested in

25   setting as tight an expert schedule and also addressing the

1    issue, the legal issue that the City might want to raise on

2    the EMS, because it's crazy to be spending money on experts to

3    discuss the negligence of the EMS if there is no basis -- no

4    realistic basis for liability.

5           MS. COOKE:  We'll take a look at that, we have some

6    of the documents now, and we'll take a look at that sooner

7    rather than later and in our best effort in a preliminary way

8    if we think there's a basis to potentially move to dismiss

9    some of those claims, we'll confer with the plaintiffs and see

10   what they think in raising (inaudible).

11          THE COURT:  Well, my suspicions are we'll hear from

12   you well before --

13          MS. COOKE:  Yes.  Your Honor, with respect to the

14   document items that Mr. Hueston just raised, some of those we

15   are getting.  Some of those we do not yet have but have

16   requested, and some are -- for example, the Firearms Discharge

17   Review Board investigation is open, not yet complete and

18   therefore I don't yet have access to those documents.

19          But with respect to the -- for example, the crime

20   scene unit case file, which we are presently receiving pieces

21   of and I expect to be able to produce that probably in the

22   next few weeks for sure; the detective's file and the IAB file

23   hopefully we'll get those as well.

24          There's a concern -- and I raised this yesterday

25   with the counsel on the telephone conference we had, that we'd

1     like to enter into a confidentiality order with respect to

2     standard documents with respect to personnel disciplinary

3     files, investigative files like the IAB file, the detective's

4     file, the forthcoming district attorney's file.

5          But in particular, in addition to a protection of

6     confidentiality over those designated materials, we'd like an

7     attorney's eyes only protection over the identity and personal

8     information of the witnesses identified in those investigation

9     files, because we have a concern of law enforcement privilege

10    with respect to that particular information of the identity of

11    those witnesses and their personal information, and the

12    endangering of those witnesses, the likelihood that it would

13    impair our ability to further investigations, but recognizing

14    the need of the parties to access -- for the attorneys to

15    access those witnesses and gather information.

16         I think interest would all be best served if we

17    could just protect them with an attorneys only stipulation

18    over that information.

19         MR. HUESTON:   Your Honor, my response here is in

20    two parts.  I'm not -- it's hard for me to directly respond,

21    because I don't know the particulars.  But in general I'll say

22    this.

23         In terms of the law enforcement privilege it hasn't

24    been articulated to me what law enforcement investigations are

25    ongoing, frankly speaking, now that -- so I don't --

1          THE COURT:  Yes. I think it's probably premature to

2     talk about this and you'll probably be in a better position in

3     a few months, once you have the documents, to know what's at

4     issue.

5          MS. COOKE:  But as they get them, in order to

6     produce them, Your Honor, I would like to have the protection

7     in place prior to the production of those documents.

8          THE COURT:  Right. I mean, to the extent you need to

9     fine tune it and add an attorney's eyes only protection, you

10    know, why don't you wait till you get those documents that you

11    think will require that sort of special treatment.

12         MS. COOKE:  I expect that the -- for example, the

13    IAB investigation file, and the detective's investigation

14    files, contain the names and personal information and

15    statements of witnesses who participated in the law

16    enforcement investigation and the district attorney's

17    investigation, and those witnesses have made statements that

18    could in this case, Your Honor, endanger their safety and

19    their privacy is at risk.

20         We have here an incident -- there was a police

21    involved shooting and the plaintiff was known to law

22    enforcement to be a member of the Bloods gang and his existing

23    relatives, who remain, his mother and the sister are the

24    plaintiff's -- on his behalf is the estate in this case.

25    There are two brothers who are reputed, known to law

1    enforcement, violent gang members as well.

2         And so we have concerns about the privacy and

3    endangering those witnesses who have been interviewed and made

4    statements that -- some of which may be favorable to the

5    arguments that plaintiffs are making and some maybe not.

6         And the threat or the risk to them I think is worthy

7    of an attorney's eyes only protection over that information.

8    So that parties can use it, discovery and access those

9    individuals, but without the wholesale exposure of them to the

10   attorneys in this case.

11        MR. HUESTON:  Your Honor, I do think it's premature

12   but what I'm hearing is that -- and maybe I'm wrong -- is that

13   they've seen these records.  But it seems they're saying that

14   they are aware of statements contrary and in support --

15        MS. COOKE:  Well, certainly in conversations with my

16   client, Your Honor, and individuals who have conducted the

17   investigation and it's closed at this point.

18        THE COURT:  What might make sense is initially -- I

19   mean, it's the identity of these people you're worried about?

20        MS. COOKE:  Yes, the identity and their telephone

21   numbers, their --

22        THE COURT:  Well, I think the personal information

23   you should just redact and you can separately provide contact

24   information to the plaintiff's counsel, should they want it.

25        MR. HUESTON:  Well, I do want all -- I do want

12

1    identifying information.  Yes, Your Honor.

2        THE COURT:  Yes.  And you might think about, you

3    know, sort of a structured production where -- because it's

4    very hard to make this kind of determination in the dark.

5        MS. COOKE:  Certainly. I raise it in part, Your

6    Honor, because of Mr. Hueston's expression of an interest in

7    getting these documents as quickly as possible, which I don't

8    disagree with, but understanding as well that there will be --

9    this information will appear repeatedly throughout the

10   detective's investigation, the IAB investigation, the district

11   attorney's investigation, so that the information, although I

12   might not have access to all of these documents at the same

13   time in the sequences we're talking about production, the

14   issue will arrive first and then it will be repeated.

15       MR. HUESTON:  Your Honor, not to beat a dead horse,

16   but I need to say this.

17       What I said to Ms. Cooke yesterday, if you think

18   it's privileged, put it on a privilege log.  Let me see your

19   legal basis for it and then I'll respond at that time. I think

20   that's the way to go, the quickest and most efficient manner.

21       THE COURT:  Yes, I was acknowledging the party's

22   interests in -- both the plaintiffs and the defendants in

23   accessing and Mr. Hueston saying that we would want access to

24   these individuals for purposes of fact discovery and their

25   information and the like.

13

1          So recognizing that need and in some instances these

2     individual's names and information might not be available to

3     us elsewhere in discovery and then balancing that need in our

4     burden and our interest in protecting information as law

5     enforcement privilege.

6          I was trying to advance the ball and just say well,

7     let's just get to the point where we'll just agree that it's

8     attorney's eyes only with respect to the witnesses contact

9     information.

10         MR. HUESTON:  Your Honor, in terms of contact

11    information, I mean, I'll look at it.

12         THE COURT:  But it may be easier just to agree to

13    that without prejudice to --

14         MR. HUESTON:  I'm fine with respect to contact

15    information.  But what was articulated yesterday was that,

16    and maybe I didn't understand it, was that we don't want this

17    information to be disclosed.  If there are witnesses John Doe,

18    I don't want you telling that to any person outside of the law

19    office or any investigator and that's the end of it.  And I

20    think that's really what your position was right?

21         MS. COOKE:  Well, I think definitionally what

22    attorney's eyes only would mean is for the attorney's use and

23    any person employed at their direction to investigate or

24    gather facts and so investigator's use.  But not -- but that

25    this information wouldn't be shared to the -- yes -- that --

1          MR. HUESTON:  I'd have to share with my clients.

2     There's no -- I represent plaintiffs and I've never agreed not

3     to share information involved in a case with my clients.

4          MS. COOKE:  Well, we have entered into attorney's

5     eyes only stipulations with respect to witness's names and

6     identities and information at the Law Department in 1983

7     actions and issues.

8          MR. HUESTON:  If there is something you could show

9     me, obviously, I will look at it, Ms. Cooke.  But I don't --

10     you know, what you're saying -- there's no ongoing

11     investigation.

12          What you've suggested, there's going to be some sort

13     of witness intimidation, that's what you've suggested, and you

14     know, frankly speaking, I take exception with it.

15          In terms of giving me the contact information, I'll

16     accept the court's recommendation without waiving my right to

17     have the information disclosed in terms of the contact

18     information.

19          I intend on discussing every aspect of the case with

20     my clients.  And unless there's some case law or something you

21     can show me to articulate that that somehow does not underpin

22     or undermine the fairness of these proceedings, you know, I

23     will oppose that.

24          THE COURT:  Have you discussed with your client the

25     nature of the investigation you will be undertaking and

1    solicit your client's views about --

2              MR. HUESTON:   We have, Your Honor.

3              THE COURT:  -- whether witnesses might -- whether or

4    not there might be a need to protect the identity of

5    witnesses?

6              MR. HUESTON:   Your Honor, Mr. Dunlop can speak more

7    to that, but I'll let you know just a couple of things.

8              Your Honor, we have been in contact with our clients

9    about the witnesses in this case throughout.   We've known

10   about the district attorney's investigation throughout.   We

11   know of a number of witnesses -- at least who we think are our

12   witnesses at this point.   We know attorneys were walking

13   people into the district attorney's office.

14             And there's been -- as far as we know, nothing's

15   been articulated about any sort of witness intimidation.   So

16   this is the first time I'm hearing about it, or a possibility,

17   as of yesterday.

18             MS. COOKE:  Well, certainly to the extent that Mr.

19   Hueston has assessable to him the names and information of

20   witnesses with knowledge relevant to the case, those were not

21   included in his initial disclosure, so I assume that the

22   disclosures will be updated and that information will be

23   provided.

24             And certainly, to the extent the confidentiality

25   orders and attorney's eyes only protections often always state

1    that to the extent that the information was lawfully obtained

2    elsewhere it's obviously not -- it's not information that

3    would be covered by the umbrella of the stipulation of a

4    protective order.

5            So that would be my response to that, Your Honor.

6            MR. HUESTON:   Well, I don't quite understand the

7    response, except to say --

8            THE COURT:  Well, she's saying that the identity of

9    these witnesses may not be -- if they're not confidential

10   because you've already acquired --

11           MR. HUESTON:   I don't know what witnesses she's

12   talking about, Your Honor.

13           THE COURT:  No, no, no.  But she's just saying if

14   you come forward with your list of witnesses, she may just

15   give up the ghost as to the witness that she's concerned

16   about.

17           MR. HUESTON:   Your Honor, the City hasn't come up

18   with its list of witnesses at this point.  They referred to

19   documents at this point.

20           THE COURT:  Anyway --

21           MR. HUESTON:   And we've referred to documents.

22           THE COURT:  I think if you have a list of witnesses

23   -- and this is not actually -- I mean, this happens in -- I

24   had a bunch of terrorism bank cases where there was a big

25   dispute over who would take the first step in making the

1    disclosure, but if it's the plaintiffs that want to have

2    fuller access and wider ability to disclosure, it certainly

3    doesn't hurt for you to come forward and say we know all about

4    these potential witnesses, and perhaps we ought to have a

5    category in your initial disclosure that -- where you might

6    not be in the position to say that your claims will be

7    dependant on these witnesses, but just to disclose knowledge

8    of witnesses who may potentially have information.

9         And it doesn't hurt because once Ms. Cooke knows

10   that you're aware of the identity of certain persons, there's

11   less of a need to protect the identity of those persons.

12        And I'd be the first person to agree that sometimes

13   law enforcement people are overly protective of the

14   confidential -- I mean, overly protective of informers and

15   people providing information.  I mean, you read a complaint

16   and you know who the informer is.  I'd rather perish the

17   thought that they would run away from using the term CI.

18        MR. HUESTON:   The point really I'm getting at, Your

19   Honor, is this.  That throughout the course of the district

20   attorney's investigation, the district attorney met with the

21   family and apprised them of what was going on, I think on

22   maybe three or four occasions.

23        And during that time, they discussed that there were

24   witnesses.  They asked lawyers to participate and so there was

25   no -- the witnesses that are in the district attorney's file

1    are witnesses that the district attorney literally said Mr.

2    Montgomery, Mr. Dunlop, you know, to the family, do you have

3    any information that you can provide.  And in some instances

4    that information was provided,  if it was available.

5            So in terms of intimidation, what I'm hearing -- and

6    that's really what I'm talking to, it's baseless.

7            MS. COOKE:  Well, I think it would be helpful if Mr.

8    Hueston and the plaintiff's counsel could provide the City

9    with a list of individuals they're aware of who have

10   information relevant to the claims in this case, whether or

11   not you intend to rely on them as a 26(a)(1) disclosure is

12   different.

13           But because I think that that would potentially

14   narrow the universe of any individual witnesses who we have

15   concerns with law enforcement privilege over that identity and

16   information, which we do have concerns about presently.  So I

17   think that that could get us forward.

18           And then to the extent that we could produce it

19   attorney's eyes -- the remaining individuals attorney's eyes

20   only as the --

21           MR. HUESTON:  Your Honor, that's completely -- I

22   think it's completely wrong.

23           THE COURT:  Mr. Hueston, just provide the list of

24   people because you may -- your list may cover everybody that

25   the defendant wants --

1          MR. HUESTON:  Your Honor -- I'm going to have to

2     say though, Your Honor, I don't think that this is proper and

3     this is why I don't think it's proper.

4          They are obviously in possession of the names of

5     witnesses at the present time.  She's had discussions with

6     them.

7          The City has not produced any list or any

8     individuals at this point.  She's saying that there are people

9     with security concerns and threats.  And she has not provided

10    it.

11         THE COURT:  They will eventually have to.   But it

12    doesn't hurt for you to take the first step and I'm asking you

13    and directing you to take the first step.  Period.

14         MR. HUESTON:  Your Honor, if I could just be heard

15    further.  I think both sides should be directed to do it at

16    the same time, Your Honor.  Why is that somehow a burden to

17    only -- each of us should share the same burden.  And maybe --

18         THE COURT:  Well, for one thing, the defendants will

19    be limited to what they can share by the documents, I would

20    think, and notes, unless you think there are other -- that

21    there are names embedded in the memories of some of the city

22    employees that would not be put in a document.  So there's

23    already a way of preserving it.  And you are going to get the

24    documents eventually.

25         So I am just trying to avoid unnecessary motion

1    practice, because it may very well be that you have a wide net

2    and that you already have the list.

3         I am going to ask Ms. Cooke to talk to the D.A.

4    about what the D.A. discussed with the family, because -- and

5    I'll ask her to share with Mr. Hueston what you were told.

6    Just come forward with the list.

7         MR. HUESTON:   I understand this is not our witness

8    list. I understand that.

9         THE COURT:  It's not your witness list.

10        MR. HUESTON:   I understand that.

11        But I do think the City is -- I think they are in

12   possession of some of these names now, Your Honor.  I don't

13   see why there should be any delay.

14        THE COURT:  Because I want you to come up with your

15   names first because -- and I'm not suggesting that you will

16   necessarily have any reason -- I mean, if you want the names

17   and I make it attorney's eyes only, okay.  But let's just

18   avoid the problem of any suggestiveness, vis-a-vis your

19   conversation with the plaintiff.  Just go through and provide

20   a list.

21        Now let's take a step back then.  Initial

22   disclosures, have they been exchanged --

23        MR. HUESTON:   Yes.

24        THE COURT:  So you will supplement initial

25   disclosures by providing a list of witnesses that you think

```
 1        may have potentially relevant information.

 2                So when can you do that?

 3            (Counsel confer.)

 4                THE COURT:  Just give the names. Just give the

 5        names.

 6                MR. HUESTON:   Ten days to get the names.

 7                THE COURT:  Okay.  I'll give you two weeks. So that

 8        will be the 30th.

 9                MS. COOKE:  And so then, Your Honor, we can

10        certainly revisit the issue of if the identity of any

11        additional witnesses that haven't been provided with this list

12        still remain and we have concerns about our --

13                THE COURT:  And you have to make a showing.

14                MS. COOKE:  Yes.  We'll make a --

15                THE COURT:  And you'll have to make a showing.

16                MS. COOKE:  Making an application for showing --

17                THE COURT:  And so that way you don't have to --

18        when you start your production have to worry about protecting

19        the identities of these individuals.

20                MS. COOKE:  Correct.  Correct.

21                THE COURT:  But in any event, I think even though

22        5.2 on redaction is a little different from the privacy act

23        requirements in -- under the criminal rules, I think the

24        criminal rules ought to apply here and you'll redact

25        residences and telephone numbers.
```

22

1          MR. HUESTON:   So the City will redact residences

2     and telephone numbers.

3          THE COURT:  From the documents, but they'll provide

4     you that information.

5          MS. COOKE:  Under a disclosure.  Like a 26(a)(1)

6     disclosure.

7          THE COURT:  Confidential disclosure.

8          MR. HUESTON:   So that would be the 30th.

9          THE COURT:  For the plaintiff.

10         Now back to the initial issue of the production.   I

11    gather you haven't made any production?

12         MS. COOKE:  We produced about 305 pages, Your Honor.

13    We've produced -- we categorized, and on our initial

14    disclosures we produced Mr. Mahnefah Gray's medical records

15    from King's County Hospital, the autopsy report of the Office

16    of the Chief Medical Examiner, the entire case file of that.

17         We produced the 8(a) report from Mr. Gray.  The 8(a)

18    reports for the officers involved in the incident, the line of

19    duty reports for the officers involved, the complaint report

20    that was prepared for this incident and relevant portions of

21    the shooting officer's memo books, the three hospital care

22    reports.

23         THE COURT:  Okay. All right.  So it doesn't sound as

24    if you disclosed anything that relates to the investigation.

25         MS. COOKE:  We didn't have -- at the time of -- on

1    August 27th, we didn't have any closed investigations.  Now

2    about two weeks ago, or a week and a half ago, the IAB

3    investigations closed.  We expect to receive that file today.

4            And the Kings County District Attorney's

5    investigation is closed and a request for that file -- they're

6    preparing it for us.

7            The 67 Detective Squad file is closed and we just

8    received a copy of that.  The Firearms Discharge Review Board

9    investigation is open pending a review and decision, and as

10   soon as that happens, and I've made inquiries as to when,

11   because I thought that would be pretty promptly here.  They

12   don't have a date yet, but I'm pushing them.  And it should be

13   prompt, as that effects my decisional representation issues,

14   Your Honor.  So I'm interested in moving it forward.

15           Then those reports and investigations of the

16   Firearms Discharge Review will be available and so everything

17   is moving.

18           THE COURT:  Okay.  Well, if things --

19           MR. HUESTON:   Can we get a date though?

20           THE COURT:  Wait.  Just listen.  You have to let me

21   finish.   I'm sorry.

22           If there is a delay in the conclusion of the

23   investigation, as frequently happens with respect to police

24   investigations, I think you ought to look into disclosing the

25   underlying data even in the absence of the report.   But we've

1   done that.

2          Because there's physical evidence that may have been

3   analyzed that's not necessarily -- that doesn't necessarily

4   need to be kept confidential.

5          MS. COOKE:  Your Honor, I think it may be in fact

6   largely duplicative of (inaudible) that either are closed or

7   will be closed that we have presently.  So --

8          THE COURT:  Okay.  So when can you make a

9   production?

10         MS. COOKE:  I expect we'll -- with the 14 days for

11  the list of witnesses, our issue with an application -- but,

12  for example, the crime scene investigation materials that are

13  rolling in, that I don't expect to have issues with.  I don't

14  expect to have issues with witnesses in there.

15         MR. HUESTON:   I think it's just a matter of

16  redacting, reviewing and --

17         MS. COOKE:  Producing. So I think, Your Honor, that

18  that's going to probably be the voluminous first roll out and

19  I expect we -- 21 days?

20         MR. HUESTON:   Yes.  I think that's fair.

21         MS. COOKE:  Yes.  21 days.  For that and anything

22  else we have ready with that.  For example, I know we got -- I

23  think we requested the autopsy x-rays of those (inaudible)

24  reflecting some documents and any additional documents we

25  have.

1          THE COURT:  Okay.  So you'll produce the documents.

2          MR. HUESTON:   Your Honor, may I inquire?  What type

3     of redactions is the City contemplating?

4          MS. COOKE:  Well, redactions for, if any, necessary,

5     you know, personal identifying information law enforcement

6     privilege work product.  Any --

7          MR. HUESTON:   Additional information privilege --

8          THE COURT:  Other than the personal identifying

9     information of both witnesses and officers, the rest you'll

10    have to --

11         MS. COOKE:  Yes.  I mean --

12         THE COURT:  The privilege log.

13         MS. COOKE:  Yes, yes.  With the crime scene

14    investigation materials and the ballistics reports.  I mean, I

15    don't expect that there will be any, but we do have any

16    obligation to review it and ensure that.

17         So I mean I don't -- with those documents in

18    particular I don't expect that we would have much of anything.

19    But the other files we're talking about, the investigative

20    files, there might be more.  And as Your Honor said, anything

21    other than those personal identifying information, we'd want

22    to redact we will.

23         THE COURT:  Okay.  I'll just include the redactions

24    in my order.

25         Now back to scheduling.  Have amendments -- have all

 1    the parties been identified that you want to bring in.

 2              MR. HUESTON:   The short answer is no, Your Honor.

 3    We don't have the other -- besides the two police officers

 4    that are here today we don't know really any other potential

 5    police officers.  So we don't have any of those reports.

 6              THE COURT:  Okay.

 7              MR. HUESTON:   So the answer is no.

 8              THE COURT:  Probably then mid-November.

 9              MR. HUESTON:   I think that makes sense.

10              THE COURT:  So what?  November 14.

11              MR. HUESTON:   That's fine, Your Honor.

12              MS. COOKE:  So that would be to amend and add

13    parties?

14              THE COURT:  Okay.  I think -- it's hard to say what

15    categories you're going to put these people under.

16              Do you think you could -- are there any categories

17    that you would consent to adding people?  You know, because

18    usually, for instance, I mean, in a false arrest case the

19    City will agree to add -- amendment to add any officers

20    involved in the arrest --

21              MS. COOKE:  I don't think that there's anything

22    that we could consent to at this point, Your Honor, because

23    the shooting officers have been identified and to the extent

24    that they have John Doe EMT's, they're going to identify and

25    produce the paperwork and the CAD report and the identities

1      of those EMT's who treated the victim on the scene and at the

2      hospital.

3             So to the extent that plaintiffs have other

4      potential City employees that they want to add to claims, I'm

5      not sure and I couldn't consent.

6             THE COURT:  Okay.  Well, let me -- okay.  I would

7      encourage you to think about consenting as to certain

8      categories.

9             I would definitely tell you, Mr. Hueston, that this

10     is one of those cases where it reflects a -- once -- if you

11     do try to bring in new parties that you can't just assert in

12     each claim a claim against all defendants, because that's

13     probably not going to be appropriate.

14            MR. HUESTON:   I think if you look at this

15     complaint, Your Honor, we did try to specific different

16     theories and we'll endeavor to do that.

17            THE COURT:  Well, you may have different theories,

18     but you may sometimes have a claim against all the

19     defendants, but more often than not not and, I mean, you do

20     talk about -- in your first claim you do limit your

21     unreasonable force to identified officers.

22            MR. HUESTON:   Yes, Your Honor.

23            THE COURT:  But to the others you have a host of

24     other claims and they may be different.  And particularly the

25     denial of medical care.  You may not -- it may not make sense

1    to name officers as part of that claim.

2          Anyway, I do encourage both plaintiffs and

3    defendants to be more cautious in their pleadings. These

4    people, of course, do look at pleadings.

5          And I don't think we have time to dwell upon

6    appropriate defenses today, but as you know, it's a constant

7    complaint of mine that defendants have a litany of attorney -

8    - affirmative defenses and there ought to be a reason -- you

9    -- when you allege it, because you have an obligation under

10   Rule 11 too when you  make defenses.

11         Defendants in 1983 cases though have been surpassed

12   by defendants in FLSA cases.  So I generally get about 30

13   affirmative defenses in FLSA cases.  I've been getting after

14   them.

15         Some of them are raised under statutes that were in

16   effect for only 18 months past the time period in question.

17   But somehow they managed to stay on the computers.

18         Anyway, so we'll try to be more concise in -- you

19   know, be precise in our pleadings and so before you make any

20   kind of application, you should check, confer with defendants

21   to see if there might be consent.  You know, if there's a

22   failure to intervene claim and it's -- I guess there have

23   been a couple of cases where officers have been liable.

24         Anyway, try to see if you can avoid motion practice

25   and if you can't, make an application by the 14th.  I'll

29

1    confer with Judge Brody whether or not she wants to handle it

2    with a pre-motion conference or -- whatever it is, we'll --

3    just read the minute entry carefully and I will -- it will

4    tell you what you need to do.

5           MS. COOKE:  Okay.  Your Honor, with respect to the

6    number of depositions.

7           THE COURT:  Yes.

8           MS. COOKE:  I expect that we will have overlapping

9    interests in certain depositions and -- but I do expect that

10   the total number of depositions might exceed ten and ten in

11   this case.

12          THE COURT:  Yes.

13          MS. COOKE:  And so you know, again, as we're

14   getting the documents it will be, you know, more certainty to

15   tell, but when I spoke to Mr. Hueston yesterday, I did

16   suggest 15 might be the number that the defendants would need

17   for their two party plaintiff -- on behalf of plaintiff's

18   estate and then I was -- you know, based on my expectation

19   that there might be up to 12 or 13 additional non-party

20   witnesses, again, there might be overlap.  But I was looking

21   to seek 15 at this point.

22          MR. HUESTON:   Your Honor, my response yesterday

23   was I don't -- if there are 15, there are 15 witnesses and

24   they can be articulated, I'm not going to oppose that, Your

25   Honor.

1          I'm a little bit in a deficit. I do think the City

2     has information that they're relying on that I can't really

3     respond to.  So I'm --

4          THE COURT:  Well, anyway, I understand what your

5     concern is.  I do think, and I was expecting more than the

6     presumptive limit.  So we'll start with 15 and -- for each

7     side. And that probably should cover the universe, but if

8     it's not enough, then come back to me.

9          I would like to think that before you engage in

10    depositions of non-parties that you would both exchange lists

11    and then figure out who you need -- whether or not there's an

12    efficient way of deposing individuals, because you may avoid

13    the need to depose certain individuals if you depose certain

14    others who may have better knowledge on a particular topic.

15         MR. HUESTON:   So we'll exchange lists, Your Honor.

16         THE COURT:  Before you begin --

17         MS. COOKE:  Yes.

18         MR. HUESTON:   Okay.  Your Honor, if I can inquire,

19    too, and maybe the City can't answer this.  Are these all

20    fact witnesses or -- I assume they're fact witnesses, people

21    who saw --

22         THE COURT:  Yes.  Yes.

23         MS. COOKE:  Yes.  They'd be non-defendants, non-

24    plaintiffs and civilians who would have known information and

25    seen information, or had information relevant to the claims

1     alleged.

2            MR. HUESTON:   But -- Your Honor, I'm sorry to be

3     pushy about it, but relevant to the claims doesn't mean that

4     they were fact witnesses -- if the City knows this.  Fact

5     witnesses to the shooting or -- and what happened in the

6     aftermath or are they witnesses speaking to some other issue.

7            THE COURT:  They're going to have to identify what

8     -- I mean --

9            MS. COOKE:  When I know them I will identify the

10    subject matters of their knowledge and relevance to the case

11    and --

12           THE COURT:  You'll seasonably supplement your

13    initial disclosure.  I'm not even requiring you to talk about

14    the testimony. I just want you to have so we can have as

15    broad a list of witnesses that won't be subject to the City's

16    concerns.

17           Okay.  So I will expect, but I won't set a deadline

18    at this time, some sort of motion for a protective order.

19    Hopefully, it will be stipulated to, but if it's not then

20    we'll set a schedule.

21           I would suggest that if there is a need for a

22    motion for a contested protective order, you tell me the

23    proposed schedule for responses and then we'll set a hearing.

24           MS. COOKE:  I expect that we'll be able to get to a

25    decision point on that, whether or not it requires the

32

1    assistance of the court, I'm not sure --

2                THE COURT:  Well, shortly after you have to make

3    your disclosures.

4                MS. COOKE:  Yes.

5                THE COURT:  Or there might be a motion to -- I

6    mean, not disclosures, but the production of the files.  And

7    that should very clearly help crystalize your views on this

8    issue.

9                Okay. I mean, if you think it might be useful, I'll

10   just set a conference in November, early November to get a

11   feel of where you are on this whole issue of confidentiality

12   and then we could even talk about amendment at that time.

13               MS. COOKE:  Okay.

14               THE COURT:  What do you think?  It can be by

15   telephone.

16               MR. HUESTON:   By phone is fine, Your Honor.

17               THE COURT:  Okay.

18               MR. DiFIORE:  If it could be after the first week

19   in November, Your Honor, because I have a trial that week.

20               MS. COOKE:  Oh, we could do it the first week. I'm

21   available.  So if -- if it works for everyone else.

22               THE COURT:  Okay.  The 5th, which is the day after

23   Election Day, at 10 o'clock?

24               MS. COOKE:  That works.

25               THE COURT:  Okay.  And then if I could ask one of

1      you to be kind enough to make the arrangements.

2                 MS. COOKE:  Yes.

3                 Thank you, Your Honor.

4                 THE COURT:  Okay.

5                 MR. HUESTON:   Thanks, Judge.

6                 THE COURT:  All right.  Anything else?

7                 MR. HUESTON:   No. I think we've covered

8      everything.

9                 THE COURT:  Yes.  And then we can get caught up on

10     what's happening.

11                MS. COOKE:  Okay.  Thank you.

12                MR. HUESTON:   Thanks, Judge.

13                MR. DiFIORE:  Thank you.

14          (Proceedings concluded at 12:30 p.m.)

15          I, CHRISTINE FIORE, Certified Electronic Court Reporter

16     and Transcriber and court-approved transcriber, certify that

17     the foregoing is a correct transcript from the official

18     electronic sound recording of the proceedings in the above-

19     entitled matter.

20

21          *Christine Fiore*

22     _____          September 23, 2014

23          Christine Fiore, CERT

24

25