UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------------------------X

CAROL GRAY and MAHNEFAH GRAY as Co-Administrators of the ESTATE OF KIMANI GEBARRIE GRAY,

                                      Plaintiffs,

-against-

THE CITY OF NEW YORK; SERGEANT MOURAD MOURAD, SHIELD # 1539; POLICE OFFICER JOVANIEL CORDOVA, SHIELD # 15786; POLICE OFFICER JOHN HODER, SHIELD # 30200; the individual defendants sued in their individual capacities,

                                        Defendants.

---------------------------------------------------------------------------X

**SECOND AMENDED COMPLAINT**

14 CV 2488 (MKB) (MDG)

**Jury Trial Demanded**

## PRELIMINARY STATEMENT

1. This is an action brought, pursuant to 42 U.S.C. § 1983, the Fourth Amendment to the United States Constitution, and the laws of the State of New York, to assert claims on behalf of the estate of Kimani Gebarrie Gray, including unreasonable seizure, false arrest, unreasonable force, failure to intervene, conscious pain and suffering, wrongful death, assault, battery, and respondeat superior liability.  Plaintiffs seek compensatory and punitive damages from the individual defendants, compensatory damages from the City of New York, an award of costs and attorneys' fees, and such other and further relief as the Court deems just and proper.

## JURISDICTION & VENUE

2. This action is brought pursuant to 42 U.S.C. § 1983 and the Fourth Amendment to the United States Constitution.  Jurisdiction is conferred upon this Court by the aforesaid statutes and 28 U.S.C. §§ 1331 and 1343.

3. Plaintiffs invoke the supplemental jurisdiction of this Court pursuant to 28 U.S.C. § 1367 to hear and decide their claims arising under state law.

4. On May 8, 2013, within 90 days of the incident alleged in this complaint, the plaintiffs filed a notice of claim with the City of New York. On February 19, 2014, plaintiffs filed an amended notice of claim naming the individual police officer defendants. More than 30 days have elapsed since plaintiffs' claims were presented to the City of New York for adjustment or payment thereof, and the defendant has neglected or refused to make any adjustment or payment.

5. This action is being commenced within one year and ninety days of the date of the occurrence herein.

6. Venue is proper here pursuant to 28 U.S.C. § 1391 because some of the acts in question occurred in Kings County and because most or all of the defendants reside in the Eastern District of New York.

**PARTIES**

7. Kimani Gebarrie Gray ("Kimani") was a 16-year old African American male and citizen of the United States.

8. Plaintiffs Carol Gray, Kimani's biological mother, and Mahnefah Gray, Kimani's biological sister, are co-administrators of Kimani's estate.

9. On May 7, 2013, by order of the Honorable Margarita Lopez Torres, Surrogate Judge of the Kings County Surrogate's Court, Letters of Administration were issued to plaintiffs and Geraud Gray (Kimani's father) with respect to Kimani's estate and these letters remain in full force and effect.

10. Defendant City of New York is a municipal corporation duly organized, authorized and existing under and by virtue of the laws of the State of New York.

11. Defendant Sergeant Mourad Mourad is a New York City Police Officer. At all relevant times, the defendant acted under color of state law and within the scope of his employment as a member of the New York City Police Department ("NYPD"). The defendant is sued in his individual capacity.

12. Defendant Police Officer Jovaniel Cordova is a New York City Police Officer. At all relevant times, the defendant acted under color of state law and within the scope of his employment as a member of the NYPD. The defendant is sued in his individual capacity.

13. Police Officer John Hoder is a New York City Police Officer. At all relevant times, the defendant acted under color of state law and within the scope of his employment as a member of the NYPD. The defendant is sued in his individual capacity.

## STATEMENT OF FACTS

14. On March 9, 2013, at approximately 10:50 p.m., Kimani was walking on the sidewalk in the vicinity of 475 East 52nd Street in Brooklyn, New York, with a few friends and acquaintances intending to attend a "Sweet Sixteen" party being held that evening.

15. At all relevant times, Kimani was obeying the law and was not engaged in suspicious activity.

16. At the above time and place, Sergeant Mourad Mourad and Police Officer Jovaniel Cordova of the NYPD pulled up in an unmarked police vehicle.

17. One of the officers in a loud voice asked Kimani where his brother was. The officer then stated in sum and substance, "You're not going to be nothing when you grow up. You're going to be just like your brother."

18. Kimani responded, "I'm not dealing with this," turned his back to the officers and, in an attempt to leave the area, tried to hop over a gate to the driveway of a home located on East 52nd Street.

19. Although Kimani was unarmed, defendants Mourad and Cordova, who were standing outside of their car a few yards away from Kimani, stopped and seized Kimani by pointing their firearms at Kimani and ordering him to "get down, get down."

20. At this point, a reasonable person in Kimani's position would have believed that he was not free to leave.

21. In an attempt to comply with the officers' commands, Kimani, who was facing the driveway and with his back to the officers, got down on his knees, raised his hands straight up in the air, and stated "I'm down, I'm down."

22. Seconds later, defendants Mourad and Cordova intentionally and maliciously shot Kimani several times striking him in the body, arms, and legs, ultimately causing his death.

23. Several of the bullets entered Kimani from the rear.

24. At no time prior to being shot did Kimani point a firearm or any other weapon at, or in the direction of, Mourad or Cordova or any other member of the NYPD, nor did Kimani threaten the officers or any other member of the NYPD either verbally or physically.

25. Defendants Mourad and Cordova did not have an objectively reasonable basis to shoot Kimani.

26. At no time, prior to shooting Kimani, did Mourad or Cordova have a reasonable basis to fear for their safety or the safety of others.

27. In the moments before being shot, upon being shot, and after being shot, Kimani perceived the threat to his life.

28. Defendants' use of such force did not immediately cause Kimani's death and Kimani was alive and conscious for a significant amount of time after being shot.

29. After he was shot, Kimani suffered, among other things, intense pain, shock, emotional distress, and fear of impending death.

30. Defendant Police Officer John Hoder and other members of the NYPD, including Sergeant Harry Santiago, Lieutenant Jose Oritz, Officer Piero Lasapenara and Officer Adam Conlin, arrived at the scene while Kimani was alive and lying on the ground bleeding from his wounds.

31. Defendants Mourad, Cordova and Hoder observed that Kimani had been shot, was gravely injured and required immediate medical attention.

32. Defendants Mourad, Cordova and Hoder heard Kimani's cries for help.

33. Defendants Mourad, Cordova and Hoder observed that the dying Kimani did not pose a threat to them or others.

34. Nevertheless, instead of administering medical aid to or comforting Kimani, defendant Hoder, acting pursuant to a facially unlawful request from

defendants Mourad and Cordova, increased Kimani's fear, pain and suffering by unnecessarily handcuffing Kimani behind his back and to a fence without Kimani's consent.

35. Eventually, emergency medical technicians arrived on the scene, treated Kimani, and transported him to the hospital where he died of his gunshot wounds on March 10, 2013 at approximately 12:14 a.m.

36. From the moment he was shot up until the time that he died, Kimani suffered and experienced, among other things, intense pain, shock, emotional distress, and fear of impending death.

37. As a result of defendants' actions, Kimani suffered severe emotional distress, mental anguish, intense pain, fear of impending death, death, loss of enjoyment of life, and other personal and physical injuries.

## FIRST CLAIM

### (§ 1983; UNLAWFUL SEIZURE AND FALSE ARREST)

(Against Defendants Mourad & Cordova)

38. Plaintiffs repeat the foregoing allegations.

39. Defendants Mourad and Cordova, acting under color of state law, stopped, seized and arrested Kimani without reasonable suspicion that Kimani was engaged in criminal activity and without probable cause in violation of § 1983 and the Fourth Amendment.

40. Defendants intended to confine Kimani, Kimani was conscious of his confinement, Kimani did not consent to his confinement, and Kimani's confinement was not privileged or lawful.

6

41. Defendants' conduct caused Kimani to suffer various personal injuries, including the injuries described herein.

42. As a result of the foregoing, plaintiffs are entitled to compensatory and punitive damages in an amount to be determined at trial.

## SECOND CLAIM
## (§ 1983; UNREASONABLE DEADLY FORCE)

(Against Defendants Mourad & Cordova)

43. Plaintiffs repeat the foregoing allegations.

44. Defendants Mourad and Cordova, acting under color of state law, used excessive and deadly force upon Kimani which was objectively unreasonable in violation of § 1983 and the Fourth Amendment.

45. Defendants' conduct caused Kimani to suffer death, loss of enjoyment of life, intense pain, fear of impending death, emotional distress, and various other personal injuries, including the injuries described herein.

46. As a result of the foregoing, plaintiffs are entitled to compensatory and punitive damages in an amount to be determined at trial.

## THIRD CLAIM
## (§ 1983; UNREASONABLE FORCE)

(Against Defendants Mourad, Cordova & Hoder)

47. Plaintiffs repeat the foregoing allegations.

48. Defendants Mourad, Cordova and Hoder, acting under color of state law, used excessive force upon Kimani by handcuffing him to a fence while he lay dying.

49. Such force was objectively unreasonable in violation of § 1983 and the Fourth Amendment and caused Kimani to suffer intense pain, fear of impending death, emotional distress, and various other personal injuries, including the injuries described herein.

50. As a result of the foregoing, plaintiffs are entitled to compensatory and punitive damages in an amount to be determined at trial.

## FOURTH CLAIM

### (§ 1983; FAILURE TO INTERVENE)

(Against Defendants Mourad, Cordova and Hoder)

51. Plaintiffs repeat the foregoing allegations.

52. Defendants Mourad, Cordova and Hoder, while acting under color of state law, had a reasonable opportunity to prevent the violations of Kimani's constitutional rights under the Fourth Amendment, but they failed to fulfill their constitutional obligation to intervene.

53. Defendants' conduct caused Kimani to suffer death, loss of enjoyment of life, intense pain, fear of impending death, emotional distress, and various other personal injuries, including the injuries described herein.

54. As a result of the foregoing, plaintiffs are entitled to compensatory and punitive damages in an amount to be determined at trial.

## FIFTH CLAIM

### (ASSAULT UNDER NEW YORK LAW)

(Against All Defendants)

55. Plaintiffs repeat the foregoing allegations.

56. Defendants Mourad, Cordova and Hoder, acting within the scope of their employment as members of the NYPD, placed Kimani in fear of imminent harmful and offensive physical contact without his consent.

57. Because defendants Mourad, Cordova and Hoder were acting within the scope of their employment when they assaulted Kimani, the City of New York is vicariously liable to plaintiffs.

58. Defendants' conduct caused Kimani to suffer fear of serious injury and death and various other personal injuries, including the injuries described herein.

59. As a result of the foregoing, plaintiffs are entitled to compensatory and punitive damages in an amount to be determined at trial.

### SIXTH CLAIM

### (BATTERY UNDER NEW YORK LAW)

(Against All Defendants)

60. Plaintiffs repeat the foregoing allegations.

61. Defendants Mourad, Cordova and Hoder, acting within the scope of their employment as members of the NYPD, made offensive and nonconsensual physical contact with Kimani.

62. Because defendants Mourad, Cordova and Hoder were acting within the scope of their employment when they battered Kimani, the City of New York is vicariously liable to plaintiffs.

63. Defendants' conduct caused Kimani to suffer death, loss of enjoyment of life, intense pain, fear of impending death, emotional distress, and various other personal injuries, including the injuries described herein.

9

64. As a result of the foregoing, plaintiffs are entitled to compensatory and punitive damages in an amount to be determined at trial.

## SEVENTH CLAIM

### (CONSCIOUS PAIN AND SUFFERING UNDER NEW YORK LAW)

(Against Defendants Mourad, Cordova and City of New York)

65. Plaintiffs repeat the foregoing allegations.

66. Defendants Mourad and Cordova, acting within the scope of their employment as members of the NYPD, used deadly physical force against Kimani without legal justification.

67. The use of such force did not immediately cause Kimani's decedent's death and Kimani was alive and conscious for a significant amount of time after being shot.

68. While conscious and alive, Kimani suffered among other things, intense pain, shock, emotional distress, and fear of impending death.

69. Because defendants Mourad and Cordova were acting within the scope of their employment when they used unlawful deadly force on Kimani, the City of New York is vicariously liable to plaintiffs for Kimani's conscious pain and suffering prior to the time of his death.

70. As a result of the foregoing, plaintiffs are entitled to compensatory and punitive damages in an amount to be determined at trial.

## EIGHTH CLAIM

### (WRONGFUL DEATH UNDER NEW YORK LAW)

(Against Defendants Mourad, Cordova and City of New York)

71. Plaintiffs repeat the foregoing allegations.

72. Defendants Mourad and Cordova, acting within the scope of their employment as members of the NYPD, used deadly physical force upon Kimani without legal justification.

73. Because defendants Mourad and Cordova were acting within the scope of their employment when they used unlawful deadly force on Kimani, the City of New York is vicariously liable to plaintiffs for Kimani's wrongful death.

74. As a result of the foregoing, plaintiffs are entitled to compensatory and punitive damages in an amount to be determined at trial.

## NINTH CLAIM

**(REPONDEAT SUPERIOR)**

(Against City of New York)

75. Plaintiffs repeat the foregoing allegations.

76. The individual defendants were acting within the scope of their employment as New York City Police Officers when they committed the above described acts against the decedent.

77. The City of New York is therefore vicariously liable for the torts pled in the fifth through eighth claims for relief.

WHEREFORE, plaintiffs demand a jury trial and the following relief jointly and severally against the defendants:

  a. Compensatory damages in an amount to be determined by a jury;

  b. Punitive damages in an amount to be determined by a jury;

  c. Costs, interest and attorney's fees, pursuant to 42 U.S.C. § 1988; and

  d. Such other and further relief as this Court may deem just and proper.

Dated: Brooklyn, New York
    November 1, 2015

            Kenneth J. Montgomery, PLLC
            Attorney at Law
            198 Rogers Avenue
            Brooklyn, New York 11225
            (718) 403-9261
            By:

            _____s/_____
            Kenneth J. Montgomery, Esq.

            Michael O. Hueston
            Attorney at Law
            16 Court Street, Suite # 3301
            Brooklyn, New York 11241
            (718) 246-2900

            Richard Cardinale
            Attorney at Law
            26 Court Street, Suite # 1815
            Brooklyn, New York 11242
            (718) 624-9391